## THE CITY OF LEAVENWORTH V. JAMES B. LAING, ET AL.

1. LEAVENWORTH CITY—*Statutes—Sale of lots for Special Taxes.* Article 2 of Chapter 46, Comp. Laws of 1862, p. 335, did not confer upon the city of Leavenworth the power to sell city lots for special taxes levied on said lots for the improvement of streets, etc. (Affirming *Paine v. Spralley,* 5 Kas., 525.)

2. ——— *No Power to Contract for improving Private Property.* In the year 1866, the city of Leavenworth had no authority to grade land in which neither the city nor the public had any legal interest, but which was the property of a private individual; and the city in such a case had no authority to compel, by special assessment or otherwise, the owner of the land to pay for such grading.

3. ——— And it makes no difference that the owner of the land was a resident of the city, and knew, at the time, that the grading was being done, and made no objection thereto, when, in fact, he did not authorize the grading to be done, either expressly or impliedly.

4. EVIDENCE. The record of the Board of County Commissioners is the best evidence of their acts.

5. ——— When the evidence to prove a particular fact consists of many links, the court, in its discretion, may designate which link may be first introduced, and its action in the premises will not be subject to review on error, unless it abuses its discretion.

6. CONTRACT—ESTOPPEL. After a city has taken possession of a certain piece of ground, and used it and claimed it as a street, and after the city has entered into a contract to have the said supposed street graded, and after the grading has all been done and accepted by the city, the city will then be estopped from denying that said supposed street was ever legally laid out or dedicated as a street.

*Error from Leavenworth District Court.*

ACTION to vacate and set aside a sale of certain lands for unpaid special taxes assessed thereon, and to declare said sale, and the tax-certificate thereon issued, to be null and void. The action was commenced by the defendants in error, James B. Laing and R. F. Haines, against the City of Leavenworth, and the administrator and heirs of John Dugan, deceased. *Laing* and *Haines* owned in severalty adjoining tracts of land, containing together about seventeen acres, lying within the corporate limits of the city of Leavenworth, but not laid out nor platted

as lots, blocks, streets, alleys, etc. Plaintiffs allege that in February, 1866, a contract was made between said city and John Dugan, by which Dugan was to grade and otherwise improve "Shawnee street," so-called, between certain points; that their said lands abut upon said "Shawnee street," and lie within the points designated; Dugan performed the specified work, which was accepted by the city; that to pay for said work, the city council by ordinance determined that an assessment to the amount of $14,730 should be made upon the property adjacent to said improvement; that said city issued to said Dugan certificates of assessment upon the several lots and parcels of land abutting on said improvement; the amount of taxes so assessed on the property of Laing being $2,059.72 and on the property of Haines, $2,059.73. The plaintiffs further show that, having failed to pay said special taxes, John Hosick, Treasurer of Leavenworth City, advertised said lands for sale, and on the first day of October, 1866, sold the same in lots and parcels to said Dugan, for the price and amount of said taxes, and issued to said Dugan a certificate of such sale, describing the property, and stating that said "Dugan would be entitled to a deed of conveyance from the city of Leavenworth, at the expiration of two years from the date of said certificate, unless the said lands be sooner redeemed by the payment of the full amount of said taxes, $4,119,-45." The plaintiffs averred the decease of said Dugan, the appointment of Michael Jordan, as administrator, etc.; and they allege that said sale is illegal and void, and has cast a cloud upon their title which they demand may be removed.

The administrator of Dugan answered, alleging that the contract, and all proceedings thereunder, on the part

of Dugan had been made and performed in good faith; that the city of Leavenworth had not paid said Dugan for said work, and had not levied any other taxes or assessments to pay the same than as set forth in plaintiffs' petition, and demanding judgment against the city of Leavenworth for the amount due, and interest.

The city of Leavenworth also answered, alleging that "the said work was done at the instance and request of said plaintiffs, who were present and saw and knew that said work was being done at the time the same was being prosecuted, and up to the time of the completion thereof, and made no objection thereto, but assented and encouraged the doing of said work; and that said plaintiffs derived a material advantage therefrom, and knew at the time of the doing of the same that the cost thereof would be assessed as the same has been done, but took no steps to prevent the doing of said work, and only objected thereto when the same had been entirely completed." The city also answered, denying the claim made by Dugan's administrator for judgment for the work done under the contract.

On the part of the plaintiffs it was claimed that "Ordinance No. 90," of the City of Leavenworth, passed and approved June 24, 1863, was in force, and that its provisions had been disregarded by the Mayor and Council. The first section of said ordinance is as follows:

"SEC. 1. Whenever in the opinion of the mayor and council it may be necessary to open and widen, grade, pave, curb, macadamize, or otherwise improve any street, alley, avenue or lane, the mayor and council shall, *by ordinance*, declare such opening, widening, grading, paving, curbing, macadamizing or other improvement necessary; and order the same to be done, which ordinance *shall be passed by a vote of two-thirds* of the members of the council."

The plaintiffs below claimed that said contract was void, as said work had not been ordered by "ordinance," "passed by a two-thirds vote" of the council, and that other provisions of said ordinance No. 90 had not been complied with in this, that there had not been prepared at any time by the city engineer, any plat of said Shawnee street and the adjacent real estate; nor any plans and specifications for doing the work on said street; nor had the council at any time prescribed the manner in which said grading was to be done.

At the final hearing of the cause the court gave judgment, ordering and decreeing that "the sale made on the 1st day of October 1866, by John Hosick, city treasurer, of the tracts of land in said plaintiff's petition described upon the tax warrants issued by the clerk of the city of Leavenworth to pay the cost and expense of grading Shawnee street from Eighth street to Seventeenth street, be, and the same is hereby set aside and declared null and void; and that the certificates of sale of the said tracts of land to pay said tax, issued by the said John Hosick as city treasurer of the city of Leavenworth be, and they are hereby cancelled and annulled.

"And it is further considered and adjudged that the said defendant Michael Jordan, as administrator of the estate of John Dugan, deceased, have and recover of and from the city of Leavenworth the sum of $5,319.09, heretofore found to be due from the city of Leavenworth to said defendant," etc.

A motion for a new trial was overruled, and the city of Leavenworth brings the case here on error.

*H. Miles Moore* and *E. Stillings*, for plaintiff in error:

1. The mayor and council acted within the scope of their authority. They had the right to order the street

to be graded and to make the contract with Dugan.  All their proceedings were regular.  Ch. 69, Laws of 1864.

The former law, and all ordinances passed in pursuance thereof, inconsistent with the law of 1864, were repealed and abrogated.  But ordinance No. 90, as to making plats, etc., if not repealed, was directory merely.  10 Wend., 659, 669.  The powers of the mayor and council cannot be limited or restricted by any ordinance.  23 Wend., 277; 22 How., 422.

2. Parties benefitted will not be allowed to enjoy the benefit and enjoin the collection of the tax.  1 Cal., 6, 455; 15 O. St., 64.  The assessment is an equivalent to be paid for the benefit derived from the improvement.  4 Hill, 76.

3. The judgment in favor of Dugan's administrator is erroneous.  A corporation cannot be liable to pay for the making of a local improvement, where it contracted to pay it by a local assessment and has authority to make such assessment; but only for neglect in making or levying the assessment.  23 Barb. 390.

In making such improvement the corporation is merely an agent of the landholders, to distribute the burden and collect and pay the money, and its warrant in favor of the contractor, directing its treasurer to pay money and charge it to the account of the improvement, creates no corporate liability.  4 Denio, 520; 31 Barb., 142.

Dugan was bound to take notice of the powers of the city and its council.  He must look to the local assessment for payment for his work.  Persons dealing with a corporation, with powers restricted by statute, are bound to look to it at their peril, that they make their contracts in a manner authorized by law.  *Brady v. Mayor*, 2 Bosw., 173; 43 Barb, 48; 1 Kas., 432; 2 id., 357.

4. The record shows sufficiently that Shawnee street was a public highway. It is not necessary to show a complete record dedication. An attempt has been made to lay it out as a public highway, and it has been used with the acquiescence of Laing and Haines for a long time. On every principle of justice the plaintiffs below, after standing by and seeing this work done, are estopped from denying the existence of the street.

A public highway may be constituted by dedication: 29 Miss., 356; 1 Oregon, 397; and dedication by *parol* is sufficient: 15 Ind., 201; 9 Wis., 240; 23 Barb., 103; 19 Conn., 250; 14 Mo., 478; and length of time is not material: 9 Wis., 240; 1 Oregon, 59; 6 Mich., 176.

Continued *user*, with the assent of the owner is proof of dedication: 8 Ind., 219; 22 Cal., 546; 22 Pick., 75.

Use by the *public*, is evidence of acceptance of the dedication: 29 Conn., 157; 16 Ind., 451.

Public use, and recognition by the proper authorities, and acquiescence on the part of the owner of the land, are a sufficient and legal establishment of a highway. 17 Ill., 416; 37 Me., 506; and parol evidence is admissible to show *where* the road is located; 1 Gilman, 10.

And when so accepted and used, the owner, and all claiming under him, are estopped from asserting any right inconsistent with such use: 42 Me., 9; 11 Ohio, 418: 2 Wash., 456; 6 Peters, 438; 19 Pick., 405; 6 Vt. 355.

*Robert Crozier* and *Sherry & Helm*, for Laing and Haines:

1. The court below found as a fact that no road or street had been laid out or indicated where the grading was done. This finding is conclusive, as a fact, upon this court, so that *what* would constitute a " dedication " is not a question here; and no tax or assessment for the

improvement of what may be assumed to be a street, would be legal.

2. The statute of the State authorizes a suit to be brought to set aside an illegal sale of any kind for the purpose of removing a cloud from one's title, even in case of sales for general taxes. This was not a sale for *taxes;* it was for assessments. It was not a contract between the owner and the public, but between the owner and the contractor. What might be the result to the contractor, as between him and the public, was a matter with which the owner has nothing to do. If the sale was illegal, it is a cloud upon his title; and he has a right to have that cloud removed; and there is no way of accomplishing this except by a proceeding which under the old forms would have been an equitable one. No action at law would have reached it. Ch. 74, Laws of 1867, 145.

3. The plaintiff in error having failed to except to the conclusions of law, is deemed to have waived all exceptions thereto, and cannot now have those conclusions reviewed. 1 Kas., 335; 2 id., 337; 12 O. St., 7; 9 Ind., 356.

*Thomas P. Fenlon* and *Clough & Wheat,* for M. Jordan, Administrator of Dugan's estate:

1. The judgment for $5,319.09 in favor of Michael Jordan, administrator, against The City of Leavenworth for the work done by said Dugan in grading said " Shawnee street," is right, and ought not to be reversed.

If the assessment levied by the city was *not* a " legal tax," then we submit that by force of § 11, ch. 69, Laws of 1864, p. 129, the administrator was entitled to such judgment, as well as upon the contract itself.

Ordinance No. 90, providing for the levying and collection of assessments for cost of improvments, required a plat of the street and adjacent real estate, and plans

and specifications of the work to be made by the city engineer, without delay, after the passage of the ordinance declaring the work necessary. This was not done; and for want thereof the assessment was illegal. 2 Kas., 357; 4 Hill, 76, 92; 40 Ill., 146; 10 Minn., 59; 38 Barb., 608; 9 How., 248; Black. Tax T., 87, 380, 449.

2. The acceptance by the city council of the work done, is sufficient to render the city liable for such work; and it is no defense that its officers failed to perform their duty. To permit the city to defend against the claim of the administrator would be allowing it to take advantage of its own wrong. Like individuals, the city is estopped by its own acts. 7 Greenl., 79, (marg.;) 38 Ill., 266; 42 N. H., 136; 14 Penn. St., 81; 17 N. Y., 450; 4 O. St., 100; 11 Wis., 490; 4 Wallace, 189.

3. It is no objection to the judgment that the administrator and the city were *co-defendants* in the court below. The administrator was entitled to his judgment in the same action in which the injunction was granted against the city. Civil Code, § 381; 3 Kas., 413, 415; 9 Paige, 90; 5 B. Mon., 199; 1 Metc., (Ky.) 339.

The opinion of the court was delivered by

VALENTINE, J.: The city of Leavenworth caused some grading to be done on the land of Laing and Haines, two of the plaintiffs below, and levied a special tax thereon to pay for said grading. The plaintiffs refused to pay said special tax, and the treasurer of said city then sold said lands for the non-payment thereof.

For the sake of convenience, (not that it is the most logical,) we will divide and consider the questions in this case, as follows: 1: Was the said sale valid? 2: Was the special tax valid? 3: And if said sale and said spe-

cial tax were both void, is the City of Leavenworth liable to the contractor who did the grading?

I. We have already decided, (*Paine v. Spratley*, 5 Kas., 525,) and we now reaffirm the decision, that under chap.

1. STATUTES—Ch. 46, Laws of 1862, confers no power on cities to sell lots for special taxes. 46, art. 2, sub-div. 1, 2, 9, and 22, Comp. L. 1862, 384, et seq.,) the City of Leavenworth was not authorized to sell city lots for special taxes levied on said lots for the improvements of streets, alleys, etc.; (11 Johnson, 77; 4 Hill, 76, 93; 3 Wend., 263; 9 Iowa, 556; 23 id., 410;) that Ordinance No. 90 of said city, entitled " An ordinance to regulate the opening, widening, grading and improving of streets, alleys, avenues, lanes, and other public grounds of the city, and levying and collecting special taxes for such improvements," approved June 24, 1863, was, so far as it provided for a sale of lots for such special taxes, without authority of law, and therefore void; that the enactment of Chap. 69, Laws of 1864, p. 123, did not have the effect to make valid that portion of said ordinance which was before that time void; and that even under said chap. 69, a valid sale of lots for such special taxes could not be made until the city council of said city had first provided for such sale: (§ 6, ch. 69, Laws 1864.)

All the transactions in the case at bar, the contract, the grading, the levying of the special tax, the sale of the land for such special tax, and the issuing of the sale-certificate, were had in the year 1866, under the laws of 1864, and under so much of said Ordinance No. 90 as was valid. At the time these transactions were had, the city council of Leavenworth had made no provision under the law of 1864, for the sale of lots or land for special taxes. Therefore it is our opinion that the said sale, and the certificate founded thereon, are absolutely void.

II. Was the special tax itself valid ? The said grading was done under a contract between the said city and John Dugan, one of the defendants below, for grading Shawnee street, from Eighth to Seventeenth street, through said plaintiffs' lands. The court below finds, and the evidence seems to sustain such finding, that " no road or street was ever laid out or dedicated through the plaintaiffs' land." The authorities of Leavenworth city seem, therefore, to have transcended their authority in employing Dugan to grade the land of private individuals—to grade land in which neither the city nor the public had any interest. The contract and the said special tax were therefore both void.

<span style="font-variant: small-caps;">2. A city has no power to provide for grading or improving private property;</span>

But Laing, one of the plaintiffs below, was a resident of Leavenworth city, and knew at the time that his land was being graded, and made no objection thereto; hence it is claimed that he is estopped from setting up or claiming that the action of the city authorities, in causing said grading to be done, was void. It is not claimed that Laing, by any act of his, ever authorized any one to do said grading, or induced any one to believe that he would pay for the same. It is not claimed that he ever admitted the validity of said contract, or the validity of said special tax; nor did he admit that any road or street run through his land. No express contract on his part to pay for said work is claimed; and no implied contract can be presumed from the circumstances. The grading was not done for him, or with any intention of primarily benefitting him. It was done for the city, and the primary object was to benefit the public. With this view of the case we do not think that either Laing or Haines is legally liable to pay for said grading.

<span style="font-variant: small-caps;">3. —— and the owner's presence without making objection, does not render him liable.</span>

III. It is claimed that the court erred in excluding certain evidence which was offered by the city of Leavenworth, to prove that there was a road through the plaintiffs' land. A witness for the city, J. C. G., was asked by the counsel for the city, "whether the report of the road viewers had been approved by the board of county commissioners." The plaintiffs below objected, claiming that oral testimony was not the best evidence, and that the records of the board of county commissioners were the best evidence. The court sustained the objection, and excluded the evidence. This was right.

*4 EVIDENCE— the best not being produced, error to reject, secondary.*

Another witness for the city, E. S., was asked the following question: "Do you recollect of Edw. Leonard furnishing you a map of a road laid out by order of the Board of County Commissioners, running from Broadway, west, where Shawnee street now is?" "Plaintiff objected, as incompetent under the proof as it now is, which objection was by the court sustained, to which ruling the defendant, the city of Leavenworth, excepted." It would seem from the record that the city of Leavenworth did not inform the court what they wanted to prove by such evidence; and it will also be seen that the plaintiffs did not state why they claimed that such evidence was "incompetent." There seems to have been no objection to the *form* of the question. It is probable that this was only a preliminary question, asked for the purpose of laying a foundation for the introduction of the map spoken of. If it was for any other purpose, it was clearly and entirely incompetent. If it was for that purpose, the court might in its discretion have allowed it to be answered. A court may generally allow any link in a chain of evidence to be

*5.— Preliminary matters admissible, without regard to their logical order.*

introduced, whether it be the first or last, or some intermediate link. And a court generally has the right to determine in its discretion which link shall be introduced first; and unless it abuses its discretion its action will not be subject to be reviewed. The object of the city was probably to prove that a road was located through the plaintiff's land, and the court in its discretion might have allowed the map of the road to be first introduced in evidence for that purpose, or might have required that evidence of some of the preliminary or other questions tending to prove the location of such a road should be first introduced. At the time this question was asked, and in fact, at the close of the trial, there were still many facts to be shown in order to prove the existence of a valid road, concerning which, no evidence had been introduced. Hence, at no time during the trial was the city of Leavenworth in a condition to demand as a matter of right, that the evidence objected to should be allowed. The court therefore, did not err.

IV. Was the city of Leavenworth liable to said John Dugan, the contractor, who did the grading? And had 6. CONTRACT — the court a right to render judgment in favor Liability—Estoppel. of the defendant Michael Jordan, as administrator of the estate of said Dugan, and against the city of Leavenworth, for the value of said grading? If the first question can be answered in the affirmative, it will be admitted under our code of procedure that the second question may also be answered in the affirmative.

The city of Leavenworth claims that she is not liable under any circumstances. There are other irregularities complained of, besides the one that there was no street or road running through the plaintiffs' land. These irregularities are as follows:

1. The contract between the city and said Dugan was not executed in accordance with said ordinance No. 90, in this, to-wit: Two-thirds of the members of the city council did not vote, (as the ordinance requires,) to have said grading done; no plats, plans, or specifications were ever made out as said ordinance requires; and the bond given by the contractor was not in double the contract price of the grading. 2d. The property was not appraised as provided by the said ordinance. 3d. The assessment of the special tax to pay for said grading was levied on too great an area of the plaintiff's land.

Without commenting specially on any of these supposed irregularities or defects, we would say, that the city had full and ample power under the act of 1864, to grade streets within the corporate limits, and that it did not require a vote of *two-thirds* of the city council to authorize the grading to be done. The city took possession of the land when the grading was done, and claimed that it was a street; the city employed Dugan to do the grading; it accepted the bond and the contract, as binding upon the parties thereto; and the city accepted and approved the grading after it was done. All this was within the general scope of their authority. It is provided for by the city charter: § 3, chap. 69, Laws of 1864, p. 126, *et seq.*; and the city is now estopped from denying the validity of the contract. It cannot now say that the grading was not done on a street; (*Mayor v. Sheffield*, 4 Wallace, 189;) nor can the city set up any of the supposed irregularities, to defeat the contractor's recovery. (See authorities cited in briefs of counsel, and particularly in brief of counsel for Michael Jordan.) Whether the property was appraised or not, and whether too great or too small an area was taxed, cannot possibly affect this case. The city

never had any authority either to appraise the property or assess the tax. As against the plaintiffs below the whole proceeding was void from the beginning.

The decision in the case of *Leavenworth vs. Rankin*, 2 Kas., 357, is not applicable to the case at bar. That decision was under a different statute, and under a different ordinance; and the decision was correct. The city council in that case transcended their powers; they went beyond the scope of their authority, violated their own charter—a general statute, of which every one must take notice, and which the contractor is presumed to have known at the time.

While Dugan, in this case, was bound to know the law as well as the city authorities, yet he was not bound to know that a certain supposed street, which was in the possession of the city, and claimed by the city to be a street, and used as such, had never been legally condemned, as a street, under the right of eminent domain, or had never been legally dedicated as a street by the proprietor of the land, or had never become a street by usage and prescription. There is also a difference between executed and executory contracts. A city will generally be relieved from performing an illegal or void executory contract before any part of the same has been executed; while on the other hand a city will in many cases be compelled to perform such a contract, if it has already been executed by the other party, and if in equity and good conscience, the city ought to perform it.

The judgment of the court below is affirmed.

All the Justices concurring.