No. 41,043

D. Curtis Skaggs and Eleanor-Beth Skaggs, his wife, *Appellants*,
v. The City of Pratt, a Municipal Corporation; Murl F. Phin-
ney, as City Engineer of the City of Pratt, *Appellees*.

(327 P. 2d 1083)

Opinion filed
July 7, 1958.

*Richard Barrett,* of Pratt, argued the cause, and *George Barrett,* of Pratt,
was with him on the briefs for the appellants.

*John Megaffin,* of Pratt, argued the cause and was on the briefs for the
appellees.

The opinion of the court was delivered by

Robb, J.: This is an appeal from an order of the trial court sus-
taining a general demurrer to a petition seeking injunctive relief
against the defendant city coupled with a further reason that
plaintiffs have a plain and adequate remedy at law and are not
entitled to the equitable relief sought by their petition.

We will summarize as much as possible the contents of the peti-
tion and a resolution of the city, published April 28, 1956, (exhibit
"A") and, except where needed for clarity, we will delete references
to the remodeling of plaintiffs' building as those matters are not
necessary to a determination of the question before us.

Defendant Phinney at all times pertinent hereto was city engineer
and building inspector of the defendant city. The resolution
adopted by the city on April 26, 1956, stated that the sidewalk
adjacent to the east boundary of plaintiffs' building was dangerous
and unsafe because of its unevenness, slant and grade; by reason
of the slant, the sidewalk would be unusually dangerous and unsafe

for travel during times of snow, sleet, and freezing rain; it was the opinion of the city's governing body that the sidewalk should be condemned, torn out and reconstructed pursuant to section 7-210 of the city's 1952 revised ordinances, and G. S. 1949, 12-1804 and 12-1805. The resolution further stated the sidewalk was condemned and should be torn out and reconstructed as provided by the ordinance; that within thirty days after the adoption of the resolution plaintiffs might reconstruct the sidewalk in accordance with plans and specifications prepared by Phinney, to be furnished plaintiffs upon request, such plans to be so prepared that the sidewalk would conform to the grade in use on the east side of the block adjacent to lots two through twelve; that in the event plaintiffs failed to reconstruct the sidewalk then it was ordered to be done and the cost assessed against plaintiffs' property, all after the thirty day period had expired.

On January 24, 1956, plaintiffs, through their contractors, had submitted to Phinney plans and specifications for the remodeling of the front of their building, re-laying the sidewalk, and other building repairs; Phinney approved the plans and specifications and issued a building permit pursuant to sections 3-201 and 3-202 of the city's 1952 revised ordinances.

Ordinance 3-201 required that such permit be obtained by the owner before proceeding with excavation for erection, enlargement, repair or removal of any building or structure and set out the information to be included in the application for the permit and the fees to be charged therefor. Ordinance 3-202 created the building inspector's office, provided for his appointment and removal, delineated the duties and powers of his office and further stated, "The person certified to fill the position shall be competent to pass upon the various phases of structural work."

In due course plaintiffs caused the sidewalk in question to be installed in conformity with section 7-202 of the city's 1952 revised ordinances which, in part, reads:

"Before any sidewalk . . . shall be laid or constructed, the city engineer . . . shall establish and stake out the alignment and grade of such sidewalk . . . and such sidewalk . . . shall be built and constructed in conformity therewith."

Plaintiffs had caused Phinney to establish and stake out the alignment and grade for the sidewalk installation. It was built and constructed according to the alignment and grade so established,

staked out, and approved by Phinney, and to plaintiffs substantial expense and cost. Plaintiffs claimed enforcement of the resolution would seriously affect their rights and property by not only entailing the expense of replacement of the sidewalk, but would do substantial damage to the front and entrance to their building; the resolution violated the bill of rights of the state of Kansas and section 1 of the fourteenth amendment to the constitution of the United States in that it was *unreasonable, arbitrary, oppressive* and *discriminatory*; it denied plaintiffs an equal protection of the law by requiring them to conform to a construction standard in laying the sidewalk contrary to the usual practice that had theretofore existed; it destroyed property and property rights without just cause or reason; it confiscated property without compensation and was inconsistent with city ordinances regulating sidewalk installation. Enforcement of the resolution by defendants would irreparably damage plaintiffs and their property unless they were granted equitable relief and plaintiffs had no adequate remedy at law.

Plaintiffs sought to enjoin enforcement of the resolution by Phinney, the city or its agents, officers, servants or employees.

Defendants filed their common general demurrer containing a further reason that plaintiffs have a plain and adequate remedy at law and are not entitled to the equitable relief sought by their petition.

This demurrer, attacking only the sufficiency of the petition to state a cause of action, was sustained by the trial court in a journal entry containing a memorandum opinion which, omitting restatement of facts in the petition already narrated here, in pertinent part reads:

"The main question involved here is with reference to the grade of the sidewalk. From the facts appearing in defendants' brief, which are uncontroverted by the plaintiffs, it seems that the floor of plaintiffs' building was 22 inches higher than the top of the curb in front of the building and approximately 19 inches higher than the old sidewalk. The distance from the curb top to the property line is about 16 feet and the high point of the sidewalk installed by plaintiffs at the property line is about 12 inches higher than the sidewalk at the corresponding point in front of the building adjoining on the south, which is about the same level as the pre-existing sidewalk in front of plaintiffs' property. Before the remodeling, there were one or perhaps two steps at the entrance way into plaintiffs' building. Now there are no steps and the new concrete slopes down in both directions from the center of the lot to joints even with the pre-existing sidewalk. This unevenness prompted the governing body to declare the new sidewalk dangerous and unsafe and to

pass the resolution now being attached. [Above-quoted facts are not alleged in petition.]

. . . . . . . . . . . .

"Section 7-218 of the revised ordinances provides as follows:

" 'It shall be unlawful for any person to construct or maintain any sidewalk or curbing in this city, unless the same shall conform to the provisions of this article, and all sidewalks hereafter constructed or reconstructed must be done in accordance with the provisions hereof, and none shall be constructed or reconstructed without the authorization and approval of the governing body of this city.' "

The trial court then quoted G. S. 1949, 12-1802 in part, but to simplify our later discussion of this statute herein, we will quote it in its entirety and italicize the portion quoted in the court below:

"*The governing body of the city shall, by ordinance, determine the plans, specifications (including widths and location in the street), for the construction, repair, and reconstruction of all sidewalks:* Provided, That plans and specifications may be adopted by reference, in which case a copy or copies of the plans and specifications as adopted shall be kept on file in the city clerk's office and, if the city has a city engineer, in the city engineer's office, and shall not be changed or amended or added to without a readoption by ordinance."

The memorandum opinion of the trial judge further stated:

"It seems apparent to me, both from the statutes and the ordinances, that the establishment of sidewalk grades is the province of the governing body of the city and that same can only be done by the enactment of an ordinance. The city engineer or building inspector, in my opinion, can only approve of sidewalk construction depending upon its grade and alignment under the ordinances. Whether or not the city engineer or the building inspector approved the grade and alignment of the sidewalk in question here is immaterial unless the same was authorized by the ordinances of the city. The petition in nowise alleges that the new sidewalk does conform to the grade and standards prescribed by the ordinances. It is quite apparent that the present sidewalk does not follow the grade of the old sidewalk at the same location and that it is not based upon the top of the curb line as seems to be provided by the ordinances. It has been found by the governing body that the present sidewalk is dangerous and unsafe and should be torn out and reconstructed. I find nothing in the petition to militate against the findings of the governing body. There is a defect in the resolution adopted by the governing body on April 26, 1956. The resolution provides that the owners may have 30 days after the adoption of the resolution within which to reconstruct the sidewalk. The resolution was not published until April 28, which *presumptably* is the commencement of the 30-day period contemplated by the ordinance. However, the petition herein was not filed until May 25, 1956, and the plaintiffs had much more than the 30 days' notice within which to commence reconstruction. Furthermore, the defect is more technical than real

and no particular point is raised by the plaintiffs in connection therewith. This being the case, I think the demurrer should be sustained."

On oral argument both counsel stated there is no contention or question of a change, or attempt to change, a pre-existing grade in this case so that will be considered as abandoned and discussion thereof is unnecessary.

Plaintiffs timely appealed from the trial court's order sustaining defendants' demurrer to their petition and in view of the fact that the trial court pinpointed and limited its ruling to the ground of the demurrer that the petition did not state facts sufficient to constitute a cause of action and discussed only that point, we shall not determine the other portion of the demurrer as to whether plaintiffs had an adequate remedy at law.

In considering the sufficiency of this petition, which has been attacked by a general demurrer, we must consider all the allegations contained therein (*Elliott v. McKenzie,* 180 Kan. 344, 304 P. 2d 550; *O'Brien v. Jones,* 183 Kan. 170, 326 P. 2d 257), we will not go outside the petition as the trial court did in its memorandum decision, and we will take as true the well-pleaded facts in the petition and give all favorable inferences that can be drawn therefrom. (*Merchant v. Foreman,* 182 Kan. 550, 322 P. 2d 740.) A defendant may demur to a petition only when it appears on the face thereof that the stated grounds of the demurrer exist. (G. S. 1949, 60-705; *Houston Lumber Co. v. Morris,* 179 Kan. 564, 567, 297 P. 2d 165.)

The only matter with which we are concerned, therefore, is the sufficiency of the allegations of this particular petition to state a cause of action for injunctive relief. This petition presents a very unique situation and one not susceptible to an easy determination for the reason that the governing body of a city possesses complete control over the public sidewalks, and the construction thereof, located within the limits of such city. This is evident from G. S. 1949, 12-1802, and the following additional statutes:

"When any sidewalk, in the opinion of the governing body, becomes inadequate or unsafe for the travel thereon, the governing body may adopt a resolution condemning such walk and providing for the construction of a new walk in place of the walk condemned." (G. S. 1949, 12-1804.)

"Nothing herein shall prohibit the owner of property abutting on a street who desires to construct or reconstruct a sidewalk from doing so without any petition or condemning resolution, if he does so at his own expense and in accordance with official plans and specifications and meets such other require-

ments as would have to be met if the sidewalk were constructed or recon-
structed by the city: *Provided,* That if such property owner desires the walk
to be constructed or reconstructed by the city and an assessment levied as
provided in other cases, he shall file a request with the governing body and it
may in its discretion provide for the construction or reconstruction of the side-
walk in the same manner as in cases where citizens or taxpayers file petitions."
(G. S. 1949, 12-1806.)

In determining the sufficiency of the allegations of this petition
to state a cause of action, there is no effort or intention to limit
this statutory power possessed by such governing body.

G. S. 1949, 12-1802 contemplates that a city governing body may
have a city engineer to whom some degree of power and duty will
be delegated. The city ordinances of Pratt gave the city engineer
power to determine the alignment and grade of a sidewalk which
had to be constructed in conformity therewith. Plaintiffs' petition
alleges they had constructed the sidewalk in question in more detail
than is required by the ordinance. It cannot be denied that plain-
tiffs had the right to construct the sidewalk, under G. S. 1949,
12-1806, so long as they complied with the city engineer's deter-
mined alignment, grade and staking out.

The resolution, which was attached to the petition and made a
part thereof, has a weakening effect thereon but the question still
remains as to what right a citizen has to rely on the restrictions set
up by a city engineer when the same city engineer is the person
provided for in the resolution to determine the plans and specifica-
tions of the new sidewalk that will replace the one condemned.
From a practical standpoint a citizen should be able to rely on a
city's governing body, its ordinances, its properly-designated of-
ficials and the requirements established by such officials under the
proper exercise of their authority so when such citizen strictly com-
plies with the law, ordinances, and the requirements of such of-
ficials he is not acting at his peril.

Whether the plaintiffs' evidence will prove the allegations of the
petition is no concern of ours at this stage of the proceedings. The
trial court's memorandum opinion states matters which do not
appear in the petition or in the resolution.

Plaintiffs allege that the resolution is unreasonable, arbitrary,
oppressive and discriminatory and when the entire petition is con-
sidered under rules already stated, the allegations show plaintiffs
complied with all that was required of them and yet the resolution

requires them to do it all over again, which would appear to justify their conclusion as to the character of the resolution.

Plaintiffs should be allowed to have the issues made up and to introduce their evidence in support of the allegations of their petition which we believe sufficiently states a cause of action. The demurrer should have been overruled. The trial court erred in sustaining the demurrer and its ruling is reversed.

So ordered.