No. 46,921

Fred Benson, *Appellee*, v. The City of De Soto, Harvey Schultz, as Mayor of Said City, and Larry Buckley, Francis Gillihan, Mary Neeland, Charles Schmidt and Burrel Steele, As Members of the City Council of the Said City of De Soto, Said Mayor and Council Constituting the Governing Body of the Said City of De Soto, *Appellants*.

(510 P. 2d 1281)

Opinion filed June 9, 1973.

*David J. Waxse*, of Payne and Jones, of Olathe, argued the cause, and was on the brief for the appellants.

*John Anderson, Jr.*, of Hackler, Anderson, Londerholm, Speer and Vader, of Overland Park, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This case involves a controversy over rezoning and the development of a mobile home complex on a tract of land located in the city of De Soto, Kansas. The trial court issued a mandatory injunction directing the governing body of the city to approve the proposed plat and street plans for the development and enjoining the city from attempting to rezone the land. After final judgment the trial court on motion of the appellee dismissed the appeal by the city on the grounds that it had not been properly perfected. An appeal was taken from the order of dismissal as well

as from the judgment of the court determining the case on its merits. The appellee has filed a motion in this court to dismiss the appeal raising the same points which were considered by the trial court in its order of dismissal.

The facts in this case are undisputed and are essentially as follows: In the summer of 1970, Fred Benson, the appellee-plaintiff, purchased 246 acres of land just south of the city limits of De Soto. Benson contemplated using the land for the development of a large mobile home court, golf course and a commercial and apartment area. Benson had numerous conversations with various people in the city and around July 1, 1970, applied to the city of De Soto to have the ground annexed to the city. The application for annexation was referred to the City Planning Commission. Benson presented to the planning commission and governing body of the city detailed plans for the land development. The planning commission recommended that the city not annex the property in view of its contemplated use. The city council conducted numerous public meetings in regard to the matter and on October 1, 1970, passed an ordinance annexing the ground to the city. In February of 1971 Benson applied for the rezoning of portions of the land for special use for mobile homes, apartments, a recreation area and commercial uses. As often happens in such situations, the application set off a storm of protest. A public meeting was held on the matter on March 4 and 7, 1971. The planning commission recommended the rezoning, which recommendation was sent to the city council on March 11, 1971. Thereupon a suit was filed by certain property owners in the district court of Johnson county seeking to enjoin the city council from acting on the rezoning application. In this action the protestors contended that the governing body could not act on the proposed application for rezoning because of claimed procedural irregularities. This action was dismissed on motion of the landowners who had brought the action. Thereafter the governing body of the city of De Soto proceeded to consider and act on the application for rezoning.

On April 1, 1971, the city council adopted city ordinance No. 395 which rezoned the land for the special uses proposed in the application. At the same meeting the city council adopted ordinance No. 396 providing for comprehensive mobile home licensing regulations. After the land was rezoned, Benson directed his consulting engineer to prepare final plans for streets, sewers and utilities. The evidence shows that in reliance upon the action of the city council in annex-

ing and rezoning the land Benson incurred expenses of approximately $56,000 for surveys, plat plans, designs, development plans for streets and utilities and a plat of the property. Of the expenses incurred approximately $29,000 was for engineering services performed after April 1, 1971, the date the property was rezoned. After completion of the plat and plans Benson submitted the same to the planning commission for approval. They were approved by the planning commission on August 3, 1971. On the same date Benson's engineer filed with the city clerk of De Soto a deed dedicating a 14-foot strip of land adjoining the platted area for use as a public street. The plat and plans, having been approved by the planning commission, were delivered to the city council for their approval. It is undisputed that the proposed plat and plans were prepared in accordance with the ordinances and regulations of the city and were in full compliance therewith. On August 10, 1971, the question of approving the plat and plans was taken up by the city council. At that time two of the five city commissioners were new having by election replaced two of the commissioners who had previously voted to approve the annexation and rezoning in the fall of 1970 and spring of 1971. The only reasons given for the rejection of the plat and plans were certain objections made by members of the governing body which had no basis in existing city ordinances or regulations. On a vote taken the city council refused approval of the plat and plans. There followed a discussion as to what procedure and action could be taken to rezone the land for residential use. At this point Benson was in the position where his land had been rezoned for special uses but he could not proceed with the development of the tract since the city council now refused to approve his proposed plat and plans.

On August 31, 1971, Benson filed an action against the city of De Soto and the members of the city council in which Benson sought a mandatory injunction directing the city to approve the plat and plans so that Benson could proceed with the development of the tract. He also requested an injunction enjoining the city from rezoning the land. The city attorney declined to represent the city in the proceeding. There was obviously a strong difference of opinion among the members of the city council as to whether the suit should be defended. Roger Noonan was retained to represent the city and city council members in the case. In the action the city and its commissioners contended that city ordinance No. 395, which rezoned the land to permit the proposed land development,

was void because of irregularities in the procedural steps leading up to the adoption of the ordinance. There is nothing in the record to disclose that the plat and plans for the development were in any way opposed as being contrary to regulations or ordinances adopted by the city. The case was tried to the court in October 1971. On March 3, 1972, the district court entered judgment in favor of Benson ordering the governing body of the city to approve the proposed plat and plans and to permit Benson to continue with the development of the tract in accordance with the established rules and regulations of the city of De Soto. Judge Carr also found that the rezoning ordinance No. 395 was valid and that the city was equitably estopped from rezoning the property so as to eliminate the use of the property for the purposes and uses set forth in ordinance No. 395 unless and until an application for such rezoning is made by the owners of all of that property.

In his memorandum decision Judge Carr made conclusions of law which succinctly set forth the reasons for his decision. His conclusions of law were as follow:

"The irregularities complained of by the defendants are procedural steps taken by the City governing body in adopting the ordinance now being questioned. Since the objections to the validity of Ordinance # 395 are the direct result of defendants' actions in adopting said ordinance, the defendant governing body is equitably estopped from asserting the objections. The ordinance is valid and the moving party, the plaintiff had and has the right to rely on its validity and proceed with the development as authorized by said ordinance.

"The approval of the plat and street plans is a purely administrative act and can be rejected only upon grounds that it does not comply with existing ordinances and minimum requirements duly established by the City. The evidence submitted by the parties shows that the plat and street plans are in conformity with the existing ordinances and that the only objections expressed at the time of the trial were certain requirements made by individual members of the governing body, not relying upon existing ordinances or City regulations."

Following the entry of judgment a special meeting of the city council was called on March 13, 1972. The mayor asked that a roll call vote be taken to determine if the city should appeal the trial court's ruling. The vote of the council was three to two in favor of appealing, with the mayor abstaining. On March 22, 1972, another special meeting was held by the city council. The mayor asked the members of the council to reconsider their decision to appeal. The council refused to do so and the mayor stated that he would veto any ordinance appointing an attorney to take the appeal. On March 30, 1972, a further meeting was conducted by the city council.

The time for taking an appeal to the supreme court from the decision of the district court was fast coming to a close. At this meeting a resolution was introduced which in substance affirmed the intention of the governing body of the city to file or have filed in their behalf a notice of appeal to the supreme court from the decision of Judge Carr. The records of the city council show that this resolution passed by a vote of three to two. The mayor refused to sign the resolution. Immediately thereafter a notice of appeal to the supreme court was read by the mayor and submitted to the council for approval. This notice of appeal, which was signed by councilmen Neeland, Bartholomew and Davis, was approved by the city council by a vote of three to two. Thereafter the notice of appeal was filed with the Clerk of the District Court of Johnson County by the three members of the city commission who had approved the same. The regular city attorney and Mr. Noonan declined to represent the city on the appeal and no other attorney had been obtained at the time this notice of appeal was filed with the Clerk of the District Court. Thereafter some difficulty developed as to the selection of an attorney to prosecute the appeal. On April 6, 1972, David J. Waxse was appointed to represent the city. On April 10, 1972, Mr. Waxse and his firm, Payne and Jones, Chartered, entered an appearance as attorneys on behalf of the city and its councilmen and since that time they have represented the appellants in this appeal.

The first issue presented on this appeal which must be determined is whether or not the appeal was properly perfected by the city so as to give this court jurisdiction to determine the case on its merits. This issue was first raised by motion to dismiss in the trial court which sustained the motion. The same issue was raised again in this court by a motion to dismiss filed here by the appellee. In contending that the appeal was not properly perfected the appellee first argues that the resolution which was adopted by the city council on March 30, 1972, authorizing the appeal was legally ineffective because it was opposed by two of the five council members and was not signed by the mayor. Appellants contend that the resolution was valid since a majority of three members of the council approved the resolution and since the resolution was not vetoed by the mayor. The thrust of the appellee's first argument on the motion to dismiss is that the city could not authorize an appeal except by the adoption of a formal ordinance which requires the signing of the same by the mayor. A mere resolution was not sufficient.

The statutes of Kansas do not specifically set forth the procedures or formality required for adoption of resolutions by the governing bodies of Kansas cities. Nor do the statutes distinguish an ordinance from a resolution or declare when it is proper to use one or the other. There is some Kansas case law on the subject. In *Shaw v. City of WaKeeney*, 187 Kan. 301, 356 P. 2d 832, we stated that it must be assumed that in its use of the word "resolution" the legislature had in mind that in the proceedings of a municipal board a resolution is something less formal than an ordinance, and, generally speaking, is a mere expression of the opinion or mind of the governing body concerning some matter coming within its official cognizance.

In *Remington v. Walthall*, 82 Kan. 234, 108 Pac. 112, this court stated that there are many things of a ministerial and administrative character that may be accomplished by a resolution. There we stated that a ministerial act or a mere detail in the execution of a power or provision for some temporary matter, applicable alone to a single and individual case, might be accomplished by means of a resolution. A number of cases from other jurisdictions are cited where a resolution has been held to be sufficient for city action in certain specific situations.

The distinction between a resolution and an ordinance is clearly set forth in McQuillin Mun Corp (3rd Ed), § 15.02, which states as follows:

"A 'resolution' is not an 'ordinance,' and there is a distinction between the two terms as they are commonly used in charters. A resolution ordinarily denotes something less solemn or formal than, or not rising to the dignity of, an ordinance. The term 'ordinance' means something more than a mere verbal motion or resolution, adopted, subsequently reduced to writing, and entered on the minutes and made a part of the record of the acting body. It must be invested, not necessarily literally, but substantially, with the formalities, solemnities, and characteristics of an ordinance, as distinguished from a simple motion or resolution.

"A resolution in effect encompasses all actions of the municipal body other than ordinances. Whether the municipal body should do a particular thing by resolution or ordinance depends upon the forms to be observed in doing the thing and upon the proper construction of the charter. In this connection it may be observed that a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed. An ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality. Thus, it may be stated broadly that all acts that are done by a municipal

corporation in its ministerial capacity and for temporary a purpose may be put in the form of resolutions, and that matters upon which the municipal corporation desires to legislate must be put in the form of ordinances. It may further be stated broadly that charters contemplate that all legislation creating liability or affecting in any important or material manner the people of the municipality should be enacted by ordinances, whether the city is acting in its governmental or private capacity. Whenever the controlling law directs the legislative body to do a particular thing in a certain manner the thing must be done in that manner.

"Resolutions, as distinguished from ordinances, need not be, in the absence of some express requirement, in any set or particular form. Furthermore, publication may be requisite with respect to ordinances but not with respect to resolutions. Finally, a common distinction between a resolution and an ordinance is that only the latter need be signed by the mayor or passed over his veto."

We have no hesitancy in holding that a city may by a resolution authorize the taking of an appeal in a civil action from a judgment of the district court. Here the resolution expressed the intent of the city council to appeal to the supreme court from the decision of the district court. The resolution adopted by the governing body of the city of De Soto in its meeting on March 30, 1972, although not signed by the mayor, was sufficient to authorize the filing of a notice of appeal in the case at bar.

The appellee's second argument on his motion to dismiss the appeal is in substance that any legal action to appeal the case by the city of De Soto had to be effected through a licensed attorney. He takes the position that since the notice of appeal in this case was signed and filed by three individual city councilmen who were not attorneys, any attempted appeal on behalf of the city was ineffective and the appeal must be dismissed.

The record discloses that a notice of appeal was filed with the Clerk of the District Court within the time required by K. S. A. 60-2103. With the possible exception of the fact that the notice of appeal was signed by the three city commissioners and not by an attorney, the notice of appeal was in all respects in compliance with that statute. We believe that the trial court was overly technical in dismissing the appeal for that reason. Here the only action taken by the three members of the city council was to sign and file the notice of appeal to protect the city until such time as an attorney could be employed to enter his appearance in the case. The notice of appeal was filed on March 30, and Mr. Waxse entered his appearance on April 10, 1972. Since then all appeal procedures have been

conducted on behalf of the city by Mr. Waxse, a licensed practicing attorney in Johnson county.

We have held in past decisions that officers of a corporation may appear in court without counsel on behalf of the corporation and that such an appearance is not a nullity and is binding upon the corporation. We note in particular *City of North Lawrence v. Hoysradt*, 6 Kan. 170, where the mayor appeared on behalf of the city without counsel and filed a stipulation for trial of the case. It was held that the appearance of the mayor was authorized by law and bound the city. In *Bank v. Prescott*, 60 Kan. 490, 57 Pac. 121, it was held that the president of a corporation could acknowledge service on the back of a summons and that such constituted a sufficient appearance in the case to confer jurisdiction over the corporation. Likewise in *Manley v. Mayer*, 68 Kan. 377, 75 Pac. 550, we held that a corporation may confess judgment by the personal appearances of its vice-president without counsel. In view of these cases we hold that the filing of the notice of appeal on behalf of the city signed by the three members of the city council was a sufficient compliance with the requirements of K. S. A. 60-2103 to confer jurisdiction in this court on this appeal. Such a conclusion is consistent with K. S. A. 60-102 which requires a liberal construction of our code of civil procedure. The trial court was in error in dismissing the appeal on motion of the appellee-plaintiff.

We will now consider the appeal on its merits. The trial court refused to consider the claimed procedural irregularities in the adoption of the rezoning ordinance No. 395 on the theory that the defendant city was equitably estopped under the circumstances from asserting the invalidity of the ordinance. The city contends that the trial court erred in applying the doctrine of estoppel to the appellant under the circumstances of this case. We must first consider the question as to the applicability of the rules of estoppel to municipal corporations. It is generally recognized that with respect to matters within the scope of its power and authority to act, a municipal corporation is subject to the rules of estoppel in those cases wherein equity and justice require their application and where such application will not interfere with the proper exercise of governmental functions; but where there is an entire absence of such power on its part, there can be no estoppel as against the municipality or its inhabitants. (28 Am. Jur. 2d, Estoppel and Waiver, § 128.) In this connection, a distinction is recognized between acts of the municipality or governing body which are not

within the scope of its general powers and such as may be open to the objection that they are lacking in some technical and formal regularity in their adoption, or that there has been a nonobservance of some collateral act or formality prescribed, not jurisdictional in its character. The former are clearly and always void, while the latter, if they lead to a perpetration of a fraud upon contracting parties acting upon the faith of laws and ordinances apparently regular and valid, will be held to bind the municipality upon the principle of having received and appropriated benefits derived on account of them, and it will be estopped to deny their validity. (*Matheney v. El Dorado*, 82 Kan. 720, 109 Pac. 166; *Portland v. Bituminous Paving Co.*, 33 Or. 307, 52 Pac. 28; annotation in 1 A. L. R. 2d, § 8, p. 357.)

It has been held that on principles of estoppel a municipality can be precluded from asserting the invalidity of its zoning ordinances. (*Township of Springfield v. Bensley*, 19 N. J. Super. 147, 88 A. 2d 271; *Gruber v. Mayor and Tp. Com. of Raritan Tp.*, 73 N. J. Super. 120, 179 A. 2d 145; *Murrell v. Wolff*, (Mo.) 408 S. W. 2d 842; 101 C. J. S., Zoning, § 20.)

Although there are no Kansas cases specifically involving zoning ordinances, this court on several occasions has applied the doctrine of equitable estoppel against cities where the equities of the cases required it. In *City of Belleville v. Hallowell*, 41 Kan. 192, 21 Pac. 105, we held that the city was estopped from asserting the invalidity of an ordinance vacating an alley. We applied the doctrine against a city which had taken possession of a piece of ground and used it as a street and then after the grading of the street had been accomplished and accepted by the city, the city denied that the street had ever been legally established or dedicated. (*City of Leavenworth v. Laing, et al.*, 6 Kan. 274.) In *H & S. Rld. Co. v. Comm'rs of Kingman Co.*, 48 Kan. 70, 28 Pac. 1078, we discussed the subject of equitable estoppel in some depth and applied it to estop a county from denying the validity of township bonds under a claim that the petition requesting the election to vote on the bonds lacked the signature of ⅔ of the resident taxpayers of the township. Estoppel against a city was also imposed in *The State, ex rel., v. City of Hutchinson*, 103 Kan. 370, 175 Pac. 147, and in *Derby Oil Co. v. City of Oxford*, 134 Kan. 59, 4 P. 2d 435.

In *Skaggs v. City of Pratt*, 183 Kan. 424, 327 P. 2d 1083, the plaintiff sought injunctive relief against the city when it threatened to tear out sidewalks and reconstruct them at cost of plaintiff.

Plaintiff alleged that he had built new sidewalks in accordance with plans approved by the city officials. Later the city governing body condemned the sidewalk and required additional expenses from the plaintiff. We held that the trial court erred in sustaining a demurrer to the petition stating as follows:

". . . From a practical standpoint a citizen should be able to rely on a city's governing body, its ordinances, its properly-designated officials and the requirements established by such officials under the proper exercise of their authority so when such citizen strictly complies with the law, ordinances, and the requirements of such officials he is not acting at his peril." (p. 429.)

It is clear from the authorities cited above that under proper circumstances the doctrine of estoppel may be applied against a city so as to preclude the city from denying the validity of its own ordinances. We cannot say that the trial court was in error in applying the rules of equitable estoppel against the city of De Soto and its governing body under the facts and circumstances presented to us in the case at bar. In passing zoning ordinance No. 395 the city council of De Soto was acting within the scope of its proper power and authority. The objections claimed by the city against the validity of the ordinance are mere procedural irregularities which do not involve claims of a denial of due process of law or matters jurisdictional in character. It is clear that Benson and his associates contracted to buy a portion of the tract of land, subject to rezoning by the city. It is undisputed that prior to the annexation of the land and its rezoning for the special purposes requested, the appellee Benson fully disclosed his plans for the development of the land and made many adjustments therein to satisfy the requirements of the city, the state highway commission and the state board of health. The tract of land was annexed to the city with the understanding that it would be rezoned to carry out the plans of Mr. Benson as developer. This annexation subjected the land to city taxation. It is undisputed in the evidence that in accordance with the suggestions of the city governing body, the appellee dedicated a 14-foot strip of the tract to widen a city street. Furthermore he incurred expenses for engineering services in preparation of the plat and plans for development of the tract in a sum exceeding $56,000, of which amount approximately $29,000 was incurred by appellee Benson after the city adopted the zoning ordinance. We also think it important that the neighboring landowners had an opportunity to attack the validity of the proposed ordinance before it was adopted

and dismissed their case. When we consider all of these facts and circumstances we believe that this is a proper case for the application of the doctrine of equitable estoppel and that the trial court was entirely correct in applying that doctrine against the city of De Soto.

In view of this holding it follows that the denial of approval by the city council of the plat and plans, which admittedly were in full compliance with all city regulations and ordinances, constituted arbitrary, capricious and unreasonable action on the part of the city. The trial court, therefore, did not err in ordering the governing body of the city to approve the plat and plans for filing with the Register of Deeds and to permit Benson to continue the development of the tract in accordance with the established ordinances and regulations of the city.

The judgment of the district court dismissing the appeal as being improperly perfected is reversed and the motion of the appellee to dismiss the appeal in this court is overruled. In all other respects the judgment of the district court determining the case on its merits is affirmed.